

2007 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

3-8-2007

# Atkinson v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-1099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Atkinson v. Atty Gen USA" (2007). *2007 Decisions*. Paper 1392.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1392

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1099

CLAUDIUS ATKINSON,

Appellant.

v.

\*ATTORNEY GENERAL OF THE UNITED STATES

\*(Amended in accordance with Clerk's Order dated
3/16/06)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 01-cv-05462)
District Judge: Honorable Lawrence F. Stengel

Argued on July 13, 2006

Before: SMITH, WEIS and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 8, 2007)

Steven A. Morely, Esquire **(ARGUED)**
Morley, Surin & Griffin, P. C.
325 Chestnut Street
Suite 1305-P
Philadelphia, PA 19106

Counsel for Appellant

Patrick L. Meehan, Esquire
United States Attorney
Robert A. Zauzmer, Esquire
Assistant United States Attorney
Susan R. Becker, Esquire **(ARGUED)**
Assistant United States Attorney
Chief of Appeals
Paul Mansfield, Esquire
Assistant United States Attorney
Virginia A. Gibson, Esquire
Assistant United States Attorney
Chief, Civil Division
615 Chestnut Street
Suite 12350
Philadelphia, PA 19106

 Counsels for Appellee

---

O P I N I O N

---

**ROTH,** Circuit Judge

If the Supreme Court has determined that the repeal of a law has an impermissible retroactive effect on a particular group, does that determination render the law impermissibly retroactive in its application to other groups affected by the repeal? That is the question before us in this appeal.

## I.  Factual Background and Procedural History

Claudius Atkinson is a citizen of Jamaica who entered the United States as a non-immigrant visitor in January 1983. He adjusted his status to that of lawful permanent resident two years later on January 25, 1985. On December 16, 1991, following a jury trial in the Court of Common Pleas for Philadelphia County, Atkinson was convicted of criminal conspiracy and possession with intent to distribute a controlled substance.

Atkinson was sentenced to not less than six or more than twelve months imprisonment to run concurrently with a sentence of not less than eleven or more than twenty-three months of work release. In addition, he was given three years of probation.

Atkinson finished serving his sentence and, according to the record, lived an uneventful existence with his family in Philadelphia until June 2, 1997, when he received a Notice to Appear, initiating removal proceedings, from the the Immigration and Naturalization Service (INS).[1] According to the Notice, Atkinson was removable from the United States pursuant to sections 237(a)(2)(B)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) because he was an alien convicted of a controlled substance offense and because he was an alien convicted of an aggravated felony.

In March 1998, an Immigration Judge (IJ) held that Atkinson was removable and ineligible to apply for a waiver of deportation under former section 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996), which permitted deportable aliens, who had accrued seven years of lawful permanent residence in the United States, to request discretionary relief from deportation if the equities weighed in favor of their remaining in the country. The IJ ruled that the repeal of section 212(c) applied retroactively. In 1991, however, when Atkinson was convicted, even aliens who had been convicted of an aggravated felony were eligible to seek such relief provided that they had served a sentence of less than five years imprisonment. See 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1182(c).

---

[1] In March 2003, the INS was folded into the Department of Homeland Security, and the action commenced against Atkinson by the former INS is now being carried on by the Bureau of Immigration and Customs Enforcement. Consistent with our previous practice, we will continue to refer to the INS because it was the agency involved in the initial action against Atkinson. Ponnapula v. Ashcroft, 373 F.3d 480, 482 n.1 (3d Cir. 2004).

Atkinson appealed the decision to the Board of Immigration Appeals (BIA), which, on June 25, 2001, affirmed the IJ's decision without a written opinion. Less than one month later, Atkinson filed a motion to reconsider with the BIA, based on the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001). The Court held in St. Cyr that the provisions of AEDPA and IIRIRA, eliminating the possibility of discretionary relief under former section 212(c), could not be applied retroactively to a lawful permanent resident alien who had pled guilty to an aggravated felony charge.[2]

While Atkinson's motion for reconsideration was pending, he was detained by the INS on October 18, 2001. On October 29, Atkinson filed a petition for a writ of habeas corpus and a stay of removal. The stay of removal was granted, and, on the same day, Atkinson was released from custody pending the resolution of his habeas petition. On July 12, 2002, the BIA issued a short opinion denying Atkinson's motion for reconsideration on the ground that St. Cyr applied only to aliens who had entered into plea agreements and not to aliens who, like Atkinson, had been tried and found guilty.

The District Court referred Atkinson's petition to a Magistrate Judge who, on April 29, 2004, issued a Report and Recommendation, advising the District Court to grant the habeas petition. The Magistrate Judge reasoned that, with respect to the retroactive elimination of section 212(c) relief, there was no principled distinction between aliens who had pled guilty and aliens who had gone to trial. After the Magistrate Judge issued her Report and Recommendation, but before the matter was considered by the District Court, we decided Ponnapula v. Ashcroft , 373 F.3d 480 (3d Cir. 2004). In Ponnapula, we held that it was impermissible to apply AEDPA and IIRIRA retroactively to aliens who had been offered pleas but had rejected them. The District Court interpreted our decision as creating a requirement that, in order to render a statute impermissibly retroactive, aliens must show that they had

---

[2]It appears that St. Cyr was issued the same day as the BIA's initial decision in Atkinson's case.

4

reasonably relied on the pre-existing state of the law. In Ponnapula, the defendant/alien had been offered a plea agreement. Atkinson was not offered an agreement. Moreover, in Ponnapula, we stated in *dictum* that we doubted that aliens in Atkinson's situation could show sufficient reliance on the then-state of the law to render IIRIRA's repeal of section 212(c) impermissibly retroactive. Id. at 494. Based on its understanding of Ponnapula, the District Court denied Atkinson's petition for a writ of habeas corpus. Atkinson filed a timely notice of appeal.

## II. **Jurisdiction and Standard of Review**

Atkinson's petition for a writ of habeas corpus was denied on December 20, 2004. Subsequently, Congress passed the REAL ID Act, which became effective in May 2005. Pub. L. No. 109-13, 119 Stat. 231. Section 106(a) of the Act eliminated the district courts' habeas jurisdiction over final orders of removal in nearly all cases. 8 U.S.C. § 1252(a)(2); Francois v. Gonzales, 448 F.3d 645, 647 (3d Cir. 2006). Where, as here, we are faced with an appeal from a district court's pre-REAL ID Act decision on a habeas petition, we vacate the district court's opinion and review *de novo* constitutional claims and questions of law in the habeas petition as if they had been filed with us in the first instance as a petition for review of an immigration decision. 8 U.S.C. § 1252(a)(1).

This petition for review presents us with a question of law: the BIA's legal conclusion that Atkinson was ineligible to apply for relief under former section 212©.

## III. **Discussion**

### A. **Statutory Framework**

Because the statutory schema in place prior to AEDPA and IIRIRA bears on

5

retroactivity, a brief history is helpful.[3]

Section 212 of the INA excluded from the United States several classes of aliens, including aliens convicted of offenses involving moral turpitude or illegal trafficking in drugs. However, the Attorney General was given discretion to admit otherwise excludable aliens.[4]  Although section 212(c) by its terms applied only to exclusion proceedings, it was interpreted by the BIA also to permit a permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver of deportation.  St. Cyr, 533 U.S. at 295 (citing Matter of Silva, 16 I. & N. Dec. 26, 30, 1976 WL 32326 (1976); Francis v. INS, 532 F.3d 268 (2d Cir. 1976)). Because of the large class of convictions that triggered removability, section 212(c) was frequently called upon to enable permanent resident aliens to remain in the country.[5]

The first significant change in section 212(c) occurred in 1990, when Congress amended it to preclude aliens convicted of aggravated felonies, who had served a term of imprisonment of five years or greater, from applying for a waiver of deportation. 104 Stat. 5052 (amending 8 U.S.C. § 1182(c)).  Then, when Congress enacted section 440(d) of AEDPA in 1996, it set forth certain offenses for which convictions would preclude resort to

---

[3]A more thorough review of the interwoven statutory framework is available in St. Cyr, 533 U.S. at 293-298.

[4]Section 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996), provided:  "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . .."

[5]Roughly 50% of applications for 212(c) relief were granted.  St. Cyr, 533 U.S. at 296 n.5 (citing Rannik, The Anti-Terrorism and Effective Death Penalty Act of 1996:  A Death Sentence for the 212(c) Waiver, 28 U. Miami Inter-Am. L. Rev. 123, 150 n.80).

212(c) regardless of sentence length. 110 Stat. 1277 (amending 8 U.S.C. 1182(c)). That same year, Congress passed section 304(b) of IIRIRA, which repealed section 212(c) and replaced it with a provision that grants the Attorney General the ability to cancel removal for a narrow class of inadmissible or deportable aliens. St. Cyr, 533 U.S. at 297. That narrow class does not include those who, like Atkinson, were previously convicted of an aggravated felony. Id. (citing 8 U.S.C. § 1229b(a)(3) (1994 ed., Supp. V)).

## B. **Retroactivity Analysis**

We begin our retroactivity analysis with the Supreme Court's decisions in Landgraf v. USI Film Prods., 511 U.S. 244 (1994), which sets out the procedure for assessing whether a civil statute should apply retroactively. The first question is whether Congress has expressly provided that the statute should be retroactive. Landgraf, 511 U.S. at 280. If the answer is yes, our inquiry is over. Mathews v. Kidder, Peabody & Co., 161 F.3d 156, 160 (3d Cir. 1998). If the statute lacks such an express statement, we ask whether the normal rules of statutory construction unequivocally *remove* the possibility of retroactivity.[6] Mathews, 161 F.3d at 160. If Congress did not expressly provide for retroactivity and if a court applying normal rules of statutory construction would not find an intent to apply the statute only prospectively, then we must determine whether applying the statute to events that antedated its enactment would have a retroactive effect. Id. at 160-61. If we find a retroactive effect, "we employ the strong presumption" against applying such a statute retroactively. Id. at 161.

---

[6]In Lindh v. Murphy, 521 U.S. 320 (1997), for example, the Court relied on a negative inference to conclude that Congress did not intend to retroactively apply certain sections of AEDPA, stating "if a congressional intent to *not* apply a statute retrospectively can be discerned, then the courts are to follow that intent, without regard to whether the statute has 'retroactive effect.'" 521 U.S. at 326-27 Mathews, 161 F.3d at 161.

7

Resolving whether a statute has a retroactive effect "demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" St. Cyr, 533 U.S. at 321 (quoting Martin v. Hadix, 527 U.S. 343, 357-58 (1999) (quoting Landgraf, 511 U.S. at 270)). "A statute has retroactive effect when it '"takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . .."'" Id. (quoting Landgraf, 511 U.S. at 269 (quoting Soc'y for Propagation of the Gospel v. Wheller, 22 F. Cas. 756, 767, No. 13,156 (C.C.D.H.N.H. (1814)))). The judgment whether a statute has retroactive effect is "informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" Id. (quoting Martin, 527 U.S. at 358 (quoting Landgraf, 511 U.S. at 270.)).

The retroactivity of the repeal of section 212(c) was considered by the Supreme Court in St. Cyr. Applying the Landgraf analysis, the Court concluded that Congress did not expressly provide for the temporal reach of the repeal. The Court then moved on to the issue of whether the repeal produced an impermissible retroactive effect on aliens like St.Cyr who had pled guilty in reliance on a plea agreement. St. Cyr, 533 U.S. at 320. The Court held that IIRIRA's removal of discretionary relief could not be applied to an alien who had negotiated a plea to an aggravated felony charge during the time when section 212(c) relief was available. 533 U.S. at 321. The Court focused on the *quid pro quo* nature of a plea agreement and stressed that an alien who had pled guilty to aggravated felony with the expectation that he would be eligible for section 212(c) relief would suffer a "new disability" if that relief were subsequently eliminated. Id. at 321-23.

The Court did not clarify whether it understood reliance by the person affected to be the condition of finding impermissible retroactivity or merely the factor, in the context of that case before the Court, that demonstrated an impermissible retroactive effect. Nor did the Court consider whether, beyond the reliance factor, there were other indicia that

8

the repeal of section 212(c) attached new legal consequences to completed events. However, since the Court's decision in St. Cyr, courts of appeals in other circuits have understood the Court's discussion of reliance and *quid pro quo* as requiring that there be reliance on the prior state of the law in order to make a finding that the elimination of section 212(c) relief is impermissibly retroactive. See, e.g., Rankine v. Reno, 319 F.3d 93, 99-102 (2d Cir. 2003) (focusing on lack of reliance in rejecting alien's claim that IIRIRA's repeal of section 212(c) was impermissibly retroactive as to aliens who went to trial and were convicted of aggravated felonies); Chambers, 307 F.3d at 284 (same); Dias v. INS, 311 F.3d 456, 458 (1st Cir. 2002) (same); Armendariz-Montoya v. Sonchik, 291 F.3d 1116 (9th Cir. 2002) (same).

Such a reading of St. Cyr, however, runs contrary to our understanding of prior Supreme Court law. As we noted above, Landgraf teaches that, in determining if a statute applies retroactively, a court must begin with the statute. If the statute is ambiguous as to its temporal reach, the question is whether it attaches new legal consequences to past events. 511 U.S. at 282-84. If the court determines that the statute has retroactive effect because of such consequences, that determination is applied across the board.

The Court has never held that reliance on the prior law is an element required to make the determination that a statute may be applied retroactively. See Ponapulla, 373 F.3d at 489 (noting that "the Supreme Court has never required actual reliance in any case in the Landgraf line."). In Landgraf, for instance, the plaintiff, Barbara Landgraf accused her employer of violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. After a bench trial, the District Court found that plaintiff had been sexually harassed, causing her to suffer mental anguish. Landgraf had, however, resigned from her employment for reasons that the District Court found to be unrelated to the sexual harassment. For that reason, the District Court dismissed her complaint because she was no longer entitled to equitable relief and Title VII did not then authorize any other form of relief. Landgraf, 511 U.S. 248-49.

While Landgraf's appeal was pending, Title VII was amended to permit recovery of compensatory and punitive damages for certain violations and to provide for a jury trial if such damages were sought. See Rev. Stat. § 1977A(a), 42 U.S.C. § 1981a(a) (1988 ed. Supp IV) as added by § 102 of the 1991 Act, Pub. L. 102-166, 105 Stat. 1972. The Supreme Court granted certiorari to decide whether the amendments applied to a Title VII case which was pending when the statute was amended. Id. at 247.

In determining that the amendment did not apply to pending cases, the Court did not base its decision on the specific conduct of Landgraf's employer or on any reliance that either Landgraf or her employer may have had on the state of the law when discriminatory conduct occurred. Instead, the Court made a general analysis of the impact of the amendment, finding retroactivity improper because the amendment instituted a legal change that attached a new legal burden to the proscribed conduct. Id. at 282-84; see also Ponnapula, 373 F.3d at 491. Since the Court found the impermissible impact, the amendment has been applied prospectively by the courts of appeals without the need for any reexamination of the basis for denying retroactivity – except a passing citation to Landgraf. See, e.g., Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 438 fn. 1, (7th Cir. 1997).

Similarly, in Hughes Aircraft Co. v. Schumer, 520 U.S. 939 (1997), the False Claims Act (FCA) had been amended in 1986 to partially remove the bar to suits based on information which was already in the government's possession. The former Division Contracts Manager for Hughes' B-2 Division brought an action in 1989 based on alleged mischarges made by Hughes against Northrup, and ultimately against the government. Hughes moved to dismiss, contending that the 1986 amendment was not retroactive and that the action against it was precluded by the pre-1986 FCA because the information upon which the action was based was already in the possession of the government. The District Court denied the motion. Hughes then moved for summary judgment on the merits. The District Court granted this motion and the plaintiff appealed. Hughes cross-appealed the denial of its motion to dismiss. The Ninth

Circuit Court of Appeals rejected the cross-appeal, finding the 1986 amendment should be applied retroactively in suits based on pre-1986 conduct. 520 U.S. 943-45.

The Supreme Court granted certiorari to consider, among other issues, whether the 1986 amendment was applicable to pre-1986 conduct. The Court held that the 1986 amendment should not have been applied retroactively. Id. at 945. In doing so the Court concluded that by eliminating a defense to an FCA action, the 1986 amendment attached a new disability to transactions already past. Id. at 948. There is, however, no consideration in Hughes of whether Hughes Aircraft, in particular, or any defendant, in general, in an FCA action might have relied on the former law in conducting business with the government. See Ponapulla, 373 F.3d at 491; Olatunji v. Ashcroft, 387 F.3d 383, 391 (4th Cir. 2004). It was the new legal burden imposed on events past, rather than the reliance on the former law by the person affected, which was the basis for holding that the 1986 amendment would not be applied retroactively.

Again, in Hadix, the question of retroactivity was the issue. Here, the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-72, 42 U.S.C. § 1997e(d)(3) (1994 ed., Supp. III) had placed a limit on the fees that might be awarded to attorneys who litigate prisoner lawsuits. The Supreme Court was asked to decide whether the limit on fees applied to post-judgment monitoring of defendants' compliance with the remedial decrees that had been performed before the PLRA became effective. The District Court had ruled that plaintiffs were entitled to fees at the prevailing rate, which had been set by the court at $150 per hour. Under the PLRA, fees would be limited to $112.50 per hour. 527 U.S. at 348-50.

The Supreme Court determined that the limitation on fees would apply to post-judgment monitoring performed after the effective date of the PLRA but not to services performed prior to that date. 527 U.S. at 347. In coming to this conclusion, the Court noted that the attorneys had worked in reasonable reliance on the fee schedule and that, before the effective date of the PLRA, they reasonably expected to receive compensation

according to this schedule.  Id. at 358-60.  A reduction in the rate of compensation would attach new legal consequences to completed conduct.  Id. (citing Landgraf, 511 U.S. at 270).

In Hadix, this reliance on a set fee was the expectation which convinced the Court that a new legal burden had been imposed on past events.  Nevertheless, reliance on pre-amendment law has not been interpreted by our sister courts of appeals as an element in determining across the board that the PLRA amendment is not retroactive.  See Cody v. Gomez, 304 F. 3d 767, 776-77 (8th Cir. 2002) (holding that in an action to determine the propriety of awarding fees for monitoring [but not the amount of the fee], the PLRA did not apply retrospectively to fee requests for services performed prior to its effective date, citing Hadix); Madrid v. Gomez, 190 F.3d 990, 994-95 (9th Cir. 1999) (holding that where fees for monitoring were awarded by motion after services were performed, not by a pre-fixed schedule as in Hadix, the PLRA did not apply retroactively, citing Hadix).

Thus, we see that the "reliance" factor is an element to consider in determining whether the enactment of a new law has created a "new disability."  Nevertheless, in Landgraf, Hughes, and Hadix, whether the party before the court actually relied on the prior state of the law is not the conclusive factor in determining whether the amendment as a whole is to be applied retroactively or prospectively.  Impermissible retroactivity, as defined in Landgraf, does not require that those affected by the change in law have relied on the prior state of the law.  Id.

We, therefore, turn to the situation of aliens who, like Atkinson, had not been offered pleas and who had been convicted of aggravated felonies following a jury trial at a time when that conviction would not have rendered them ineligible for section 212(c) relief. Does applying IIRIRA to eliminate the availability of discretionary relief under former section 212(c) attach new legal consequences to events completed before the

12

repeal? We conclude that it does and that Atkinson cannot be precluded from applying for 212(c) relief.[7]

Atkinson's case presents a straightforward application of the retroactive effect test. IIRIRA has plainly attached new legal consequences to Atkinson's conviction. See Olatunji, 387 F.3d at 396. Prior to IIRIRA's enactment, Atkinson remained free to apply for a waiver under section 212(c) despite his conviction of an aggravated felony. After IIRIRA, he lost that right; applying basic principles of retroactivity, IIRIRA attached a new legal consequence to Atkinson's conviction: the certainty – rather than the possibility – of deportation. Such a change in legal consequences based on events completed before IIRIRA's enactment constitutes an impermissible retroactive effect. See St. Cyr, 533 U.S. at 325; Landgraf, 511 U.S. at 283; Hughes, 520 U.S. at 942.

We emphasize that the important "event" to which IIRIRA attached a new legal consequence was the conviction. The fact that Atkinson was not offered a plea and did not engage

---

[7] The government argues that Atkinson is barred from obtaining a discretionary waiver under former section 212(c) because he failed to establish seven-years of unrelinquished, lawful permanent residence in the United States. The government makes its argument on the basis of the "stop-time" provisions enacted as part of IIRIRA, which, the government contests, interrupt the accrual of time toward the seven years of unrelinquished residence upon conviction of an aggravated felony. Because of the date of enactment of IIRIRA stop-time provisions, we are inclined to believe that they apply only to cancellation of removal, 8 U.S.C. § 1229b(d)(1), and not to aliens seeking a discretionary waiver under former section 212(c). See Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999). We do not explicitly so hold, however, because neither the IJ nor the BIA relied on the stop-time provisions in rejecting Atkinson's attempt to seek a waiver under former section 212(c). Accordingly, the government remains free to raise this argument in response to Atkinson's application for 212(c) relief.

13

in a *quid pro quo* exchange is not the event which triggered his inability to seek relief. Applying IIRIRA's repeal of 212(c) retroactively affected aliens because of the *conviction* for an aggravated felony. This is clear because, regardless of whether the conviction resulted from trial or plea, IIRIRA's repeal of section 212(c) had the same impact – the repeal did not attach any different legal consequences to a conviction based on a bargained plea than it did to a conviction following trial.

A significant characteristic of the "event" here is that it occurred in the past and cannot be changed. That fact distinguishes Atkinson's situation from that of an alien felon who has returned to the country illegally. In Fernandez-Vargas, the Supreme Court held that IIRIRA's provision for reinstatement of removal orders against aliens illegally reentering the United States could be applied retroactively to aliens who reentered prior to IIRIRA's enactment. 126 S. Ct. 2422 (2006). The Court found that applying IIRIRA to such aliens did not attach new legal consequences to past events because "it is the conduct of remaining in the country after entry that is the predicate action; the statute applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country." Id. The Court specifically distinguished the situation in St. Cyr because in that case the alien's plea and agreement for a *quid pro quo* were entirely in the past, "and there was no question of undoing them." Id. at 2432. Here, Atkinson's trial and conviction are entirely in the past, and there is no possibility of undoing them. See also St. Cyr v. INS, 229 F.3d 406, 418 (2d Cir. 2000) ("it is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief.") (internal citations and quotations omitted); Thom v. Ashcroft, 369 F.3d 158, 168 (2d Cir. 2004) (Underhill, District Judge, dissenting) (noting that the conviction was the relevant past event because it was the trigger for whether IIRIRA attached new legal consequences); contra Chambers v. Reno, 307 F.3d 284, 293 (4th Cir. 2002) (stating that the relevant past conduct was the alien's decision to go to

14

trial).[8]

For the above reasons, we conclude that reliance is but one consideration in assessing whether a statute attaches new legal consequences to past events. See Landgraf, 511 U.S. at 270. In applying its commonsense, functional judgment as to whether a statute attaches new legal consequences, a court can certainly be *guided by* considerations of fair notice, reasonable reliance, and settled expectations. Hadix, 527 U.S. at 357-58. Nowhere in the Supreme Court's jurisprudence, however, has reliance (or any other guidepost) become the *sine qua non* of the retroactive effects inquiry. Olatunji, 393-94. Moreover, nothing in the Landgraf line of cases supports the theory that the limits of permissible retroactivity are different for one group – those who accept (or consider) a plea agreement – than they are for another – those who exercise their constitutional right to a trial.

It is for this reason that we are not troubled by our *dictum* in Ponnapula casting doubt on whether an alien in Atkinson's situation could demonstrate a reasonable reliance interest necessary to demonstrate a retroactive effect. 373 F.3d at 494. Specifically, we stated that "aliens [who went to trial because they were not offered a plea agreement] had no opportunity to alter their course in the criminal justice system in reliance on the availability of § 212(c) relief, [and] we highly doubt (though do not explicitly hold, for the issue is not before us) that such aliens have a reliance interest that renders IIRIRA's repeal of former § 212(c) impermissibly retroactive as to them." Id. We agree that aliens who were not offered plea bargains did not rely on

---

[8]The dissent in Chambers described the relevant past conduct to be the alien's crime of conviction. Id. at 293-94. The dissent noted that it was the underlying criminal conduct, not the decision to plead, that rendered the alien subject to deportation and in need of the ability to apply for a section 212(c) waiver. Id. at 295. The dissent was on the proper track but we consider the relevant past event to be the conviction – absent a legal determination of guilt, the alien is not subject to deportation or in need of section 212(c) relief.

15

the existence of section 212(c) relief in deciding to go to trial. This does not cause us pause, however, because the relevant question is whether IIRIRA attached new legal consequences to those aliens' convictions and resulting sentences. The answer, as we have described, is yes.

## IV. <u>Conclusion</u>

We hold that the BIA cannot preclude Atkinson from applying for a discretionary waiver under former section 212(c) because IIRIRA's repeal of that section cannot be applied retroactively. Treating Atkinson's appeal from the District Court's denial of his habeas petition as a petition for review, <u>Francois</u>, 448 F.3d at 647, we will grant the petition and remand this case to the BIA for further proceedings consistent with this opinion.