**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3825
_____

LOUIS EVANGELISTA, SR.,
AKA Luigi Evangelist,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency No. A012-352-319)
Immigration Judge: Paul Grussendorf
_____

Argued October 5, 2020

Before: JORDAN, KRAUSE, and MATEY, *Circuit Judges*

(Opinion filed: October 14, 2021)
_____

OPINION*
_____

KRAUSE, *Circuit Judge*.

Because Appellant Louis Evangelista remained eligible for § 212(c) relief between

the time that he chose to go to trial rather than take a plea deal and the time that he was

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

found guilty by a jury, we hold that AEDPA cannot be applied to withdraw that eligibility without violating the bar on retroactivity. Accordingly, we will grant the petition for review and remand to the Board of Immigration Appeals ("BIA") to exercise its discretion whether to reopen Evangelista's removal proceedings under the correct legal framework. *See Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017).

## I.  Background

Historically, § 212(c) of the Immigration and Nationality Act ("INA") permitted lawful permanent residents facing deportation to apply for a discretionary waiver of removal if they could show that (a) they had a lawful unrelinquished domicile of seven consecutive years and (b) they had not been convicted of an aggravated felony for which they served a term of at least five years' imprisonment.[1] *See* 8 U.S.C. § 1182(c) (1994). In 1996, however, Congress revisited § 212(c) twice in quick succession.

First, in April 1996, it passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which disqualified from § 212(c) relief any noncitizen who "is deportable by reason of having committed" an aggravated felony, regardless of sentence. Pub L. No. 104-132, § 440(d), 110 Stat. 1214, 1277. Then, in September 1996, it passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which repealed § 212(c) altogether, Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, -597 (1996). But this repeal did not go into effect immediately, leaving § 212(c)—as amended by

---

[1] Although by its terms § 212(c) applied only to exclusion, the BIA and federal courts also applied it to deportation proceedings. *See INS v. St. Cyr*, 533 U.S. 289, 295 (2001).

2

AEDPA—in place from April 1996 to April 1997. *See* IIRIRA § 309, 110 Stat. 3009-625.

Louis Evangelista, an Italian citizen who has resided in the United States since being admitted as a legal permanent resident in 1961, fell into that gap. In 1995, Evangelista was charged with various offenses, including tax evasion in violation of 26 U.S.C. § 7201, an aggravated felony. At that time, a conviction for this offense would not automatically disqualify him for a § 212(c) waiver so long as he was sentenced to less than five years' imprisonment. Following his indictment, Evangelista and the Government engaged in plea negotiations, and Evangelista, reasonably relying on the availability of § 212(c) relief, declined to enter a guilty plea and instead proceeded with a jury trial, resulting in a guilty verdict in February 1996. Evangelista was sentenced to 51 months' imprisonment in October 1996, by which time AEDPA had taken effect, disqualifying him for § 212(c) relief based on his conviction for an aggravated felony, regardless of the sentence imposed.

Against this backdrop, when the Government sought to remove Evangelista three years later, the Immigration Judge ("IJ") concluded that he was ineligible for § 212(c) relief because he was convicted of aggravated felony after AEDPA's effective date. Evangelista pursued § 212(c) relief in numerous challenges to his order of removal over the next several years, and DHS appeared to accede by granting him a series of deferrals through 2017. In 2018, however, DHS renewed its efforts to remove him, prompting Evangelista filed a motion to reopen in which he urged the BIA to reconsider its position that he was ineligible for a § 212(c) waiver. The BIA agreed that Evangelista would have

3

been eligible to apply for § 212(c) relief at the time he elected to go to trial in February 1996 and that his case was "very sympathetic," but it nonetheless declined to exercise its *sua sponte* authority to reopen on the ground that, because his formal judgment of conviction was entered after AEDPA's effective date, he was statutorily ineligible for relief. This petition for review followed.

## II.    Discussion[2]

Evangelista challenges the BIA's premise that AEDPA renders him ineligible for relief under § 212(c) and argues that it would be impermissibly retroactive to subject him to a statute that went into effect only after he had declined to enter a plea and the jury had returned its verdict, *i.e.*, after his opportunity to change his plea became irrevocable.[3] In analyzing whether a civil law applies retroactively, we first ask "whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). If so, our inquiry ends. *See Matthews v. Kidder, Peabody & Co.*, 161

---

[2] The BIA's decision to reopen a "case in which it has rendered a decision," is discretionary. 8 C.F.R. § 1003.2(a). We retain jurisdiction, however, to determine if "the BIA relie[d] on an incorrect legal premise" and, if so, to "remand to the BIA so that it may exercise its *sua sponte* authority under the correct legal framework." *Sang Goo Park*, 846 F.3d at 651 (citing *Pllumi v. Att'y Gen.*, 642 F.3d 155, 160 (3d Cir. 2011)). We exercise plenary review over questions of law, *Perez v. Elwood*, 294 F.3d 552, 561 (3d Cir. 2002), even as we recognize that "ultimately it is up to the BIA to decide whether it will exercise its discretion to reopen." *Pllumi*, 642 F.3d at 160.

[3] While the INA's time- and number-bars might ordinarily foreclose a subsequent motion like Evangelista's, Evangelista identified substantial grounds for equitable tolling and the Government, having expressly conceded that argument agreeing that the BIA equitably tolled the time- and number-bars below, is bound by its waiver. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146-47 (3d Cir. 2017).

4

F.3d 156, 160 (3d Cir. 1998).  If not, then we "must determine whether the new statute would have retroactive effect." *Landgraf*, 511 U.S. at 280.

The first step has been accomplished for us.  In *INS v. St. Cyr*, the Supreme Court held that Congress did not expressly provide for AEDPA's changes to § 212(c) to be retroactive.[4]  *See* 533 U.S. at 320; *see also Atkinson v. Att'y Gen.*, 479 F.3d 222, 227 (3d Cir. 2007) (describing *St. Cyr*'s analysis at *Landgraf* step one).  We thus ask if AEDPA's changes to § 212(c) have a "retroactive effect;" that is, if they "attach[] new legal consequences to events completed before [their] enactment."  *St. Cyr*, 533 U.S. at 321 (internal quotation marks omitted) (quoting *Landgraf*, 511 U.S. at 270).  Here, the new consequence is clear: AEDPA makes Evangelista ineligible for § 212(c) relief when he would not have been otherwise.  Our task, then, is to determine the past event to which AEDPA attached this new consequence, applying the "commonsense, functional judgment" demanded by the Supreme Court.  *Id.* at 321.

The Government contends that the relevant event was Evangelista's formal judgment of conviction upon sentencing, which occurred six months after AEDPA was

---

[4] *St. Cyr* involved the retroactive application of both AEDPA and IIRIRA to a noncitizen who had pleaded guilty before the enactment of those statutes.  While the Court expressly referenced only IIRIRA's repeal of § 212(c) in discussing *Landgraf* step one, it necessarily reached the same result as to AEDPA's restrictions on § 212(c) to conclude that *both* statutes were impermissibly retroactive as applied to the noncitizen in that case. 533 U.S. at 320.  *Accord Lopez v. Sessions*, 901 F.3d 1071, 1076 (9th Cir. 2018); *see also In re Abdelghany*, 26 I. & N. Dec. 254, 259 (BIA Feb. 28, 2014) ("A guiding principle underlying *St. Cyr* is that Congress did not express a clear intention that the AEDPA and IIRIRA amendments relating to section 212(c) would operate in a manner that would have a 'retroactive effect.'").

5

enacted and so would be subject to AEDPA's dictates without any need to consider retroactivity. It reaches this conclusion in three steps, observing that: (1) § 440(d) of AEDPA disqualified from § 212(c) relief noncitizens who were "deportable by reason of having committed" an aggravated felony, 110 Stat. at 1277; (2) a noncitizen is "deportable" once he is "convicted of an aggravated felony," 8 U.S.C. § 1251 (1996), and (3) under IIRIRA's definition of "conviction," which is expressly retroactive, *see Perez*, 294 F.3d at 561, a noncitizen is "convicted" when the trial court enters a formal judgment of conviction, including the sentence.[5]

But while we agree that AEDPA made eligibility for § 212(c) relief turn on conviction for an aggravated felony,[6] it also attached new legal consequences to

---

[5] IIRIRA defines "conviction" for immigration purposes as either "a formal judgment of the alien entered by a court," or, in the absence of such a judgment, when "a judge or jury has found the alien guilty or the alien has entered a plea of guilty" and "the judge has ordered some form of punishment." IIRIRA § 322(a)(1), 110 Stat. at 3009-628 (codified at 8 U.S.C. § 1101(a)(48)(A)).

[6] This interpretation finds support in the decisions of our sister circuits regarding analogous provisions of AEDPA and IIRIRA where the phrase "removable [or deportable] by reason of having committed" has been interpreted by reference to the underlying statute. *Compare Adefemi v. Ashcroft*, 335 F.3d 1269, 1273 (11th Cir. 2003) (concluding that "the meaning of the term 'deportable'" in Section 309(c)(4)(G) "must be derived from the underlying statute[]," which "makes aliens 'deportable only when they have been '*convicted*'" of a covered offense (emphasis in original)), *and Choeum v. INS*, 129 F.3d 29, 38 (1st Cir. 1997) (interpreting the phrase "deportable by reason of having committed" under § 440(a) of AEDPA by reference to § 241(a)(2)(C), which renders an alien deportable if "convicted" of a firearms offense) *with Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1053 (9th Cir. 2005) (interpreting the term "deportable" under § 1229b(b)(2) by reference to § 1182(a)(2)(C), which "does not require a conviction, but only a 'reason to believe' that the alien is or has been involved in drug trafficking." (quoting *Lopez-Molina v. Ashcroft*, 368 F.3d 1206, 1209 (9th Cir. 2004))), *and Fernandez-Bernal v. Att'y Gen.*, 257 F.3d 1304, 1309 (11th Cir. 2001) (interpreting the phrase "removable by reason of

6

Evangelista's decision to accept a plea deal or go to trial. "[T]he availability of discretionary relief plays a central role in many aliens' decisions regarding whether to accept a plea agreement." *Ponnapula v. Ashcroft*, 373 F.3d 480, 494-95 (3d Cir. 2004) (citing *St. Cyr*, 533 U.S. at 322-23). Indeed, such immigration consequences implicate sufficiently "weighty reliance interests" that the Constitution guarantees defendants the right to be advised of those consequences in criminal proceedings. *Francisco-Lopez v. Att'y Gen.*, 970 F.3d 431, 439 (3d Cir. 2020) (citing *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)). Accordingly, where a defendant has had the option of accepting a plea bargain, both we and the Supreme Court have looked to the time of that decision to determine if a law has an impermissible retroactive effect.

In *St. Cyr*, for example, the Supreme Court held that AEDPA and IIRIRA attached new consequences to the decision to accept a plea bargain because "[p]rior to AEDPA and IIRIRA," aliens who took plea deals "had a significant likelihood of receiving § 212(c) relief," whereas pleading guilty after AEDPA and IIRIRA meant "facing certain deportation." 533 U.S. at 325. The Court emphasized that "a great number of [aliens] agreed to plead guilty" in reliance on "settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief," *id.* at 323, and thus "the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect," *id.* at 325.

---

having committed" under § 1252(a)(2)(C) by looking to the underlying statute, § 1182(a)(2)(A)(i)(II), which renders an alien removable for "having been convicted of [a covered offense] or having admitting to committing it or acts constituting it").

Building on *St. Cyr*, we held in *Ponnapula* that AEDPA and IIRIRA attached new consequences not only to an alien's decision to accept a plea, but also to an alien's decision to turn down a misdemeanor plea deal because, at the time, "even if he were convicted of a felony after trial he would still be eligible for [§ 212(c) relief]." 373 F.3d at 497 (quotation omitted). We stressed that "the reliance interest of an alien who accepts a plea agreement arises at the time the choice is made to accept the agreement." *Id*. at 494.

The Government suggests that Evangelista must show actual reliance on the availability of § 212(c) relief when he chose to go to trial. But "[t]he Supreme Court has never required actual reliance" to establish a retroactive effect. *Ponnapula*, 373 F.3d at 493; *see also Vartelas v. Holder*, 566 U.S. 257, 273 (2012) ("[T]he presumption against retroactive application of statutes does not require a showing of detrimental reliance[.]"). Rather, as we explained in *Atkinson*, reliance "is an element to consider in determining whether the enactment of a new law has created a 'new disability'" or attached new legal consequences to a past event. 479 F.3d at 229; *see also id*. at 227-29. And in any event, as in *Ponnopula*, Evangelista's reliance on the availability of § 212(c) relief is supported by the record. In his sworn affidavit, Evangelista explained that if he had known that "new laws could foreclose the traditional process for obtaining a [§ 212(c)] waiver . . . everything would have been different. [He] could have pleaded guilty and started to pay off my debts . . . I could have negotiated a plea agreement that didn't require pleading guilty to the singular charge . . . that supported the deportation proceedings." J.A. 27.

8

With this in mind, we find this case virtually indistinguishable from *Ponnapula*:

Like the alien there, Evangelista had plea discussions with the Government before

AEDPA took effect and opted to reject a plea and try the case before a jury.  At that time,

regardless of whether his guilt was determined by plea or by trial, Evangelista could

reasonably expect he would remain eligible for § 212(c) relief whenever he was

sentenced, so long as he was sentenced to less than five years' imprisonment.  Only after

the jury returned its verdict and his choice not to enter a plea became irrevocable did

AEDPA attach to that choice a new legal consequence: ineligibility for § 212(c) relief.

Had that been the state of the law earlier, a noncitizen in Evangelista's position may well

have made a different choice or even negotiated different plea terms, as Evangelista

attested he would have done.  Even the Government concedes that "pleading guilty

before [April] [19]96 would have changed [Evangelista's] situation" and preserved his

eligibility because "he would have been covered by *St. Cyr*."  Oral Arg. at 30:10-30:16.

In short, no less than in *Ponnapula*, AEDPA had a retroactive effect on Evangelista's

decision to decline a plea and proceed to trial.[7]  *See Ponnapula*, 373 F.3d at 484 ("It is

---

[7] Our holding in *Atkinson* is not to the contrary.  There we concluded that IIRIRA could not be applied retroactively even to "aliens who . . . had *not* been offered plea deals and who had been convicted of aggravated felonies following jury trial at a time when that conviction would not have rendered them ineligible for section 212(c) relief." 479 F.3d at 229-30 (emphasis added).  For that group of aliens, we explained, the "important 'event'" to which IIRIRA attached new legal consequences was "the conviction" because—in contrast to the situation addressed in *Ponnopula*, as well as the one before us today— retroactive application of the statute would render those aliens ineligible for relief "regardless of whether [their] conviction[s] resulted from trial or plea." *Id.* at 230.  Likewise, our holding in *Perez* that IIRIRA's repeal of § 212(c) applied to a noncitizen who was tried before IIRIRA went into effect but sentenced after, *see* 294 F.3d

9

hard to imagine that [petitioner] would not have accepted the misdemeanor plea offer if he had known about the risk of being ineligible for § 212(c) relief.").  We conclude that AEDPA "operates retroactively" in this circumstance and cannot, consistent with the "commonsense, functional judgment" we are called upon to exercise, be applied to Evangelista.  *St. Cyr*, 533 U.S. at 321 (quotations omitted); *see also Ponnapula*, 373 F.3d at 483.

### III.    Conclusion

For the foregoing reasons, we conclude that the BIA's ruling that Evangelista was statutorily ineligible for § 212(c) relief rested on an incorrect legal premise.  Accordingly, we will grant Evangelista's petition for review and remand to the BIA to exercise its *sua sponte* authority under the correct legal framework.  *See Sang Goo Park*, 846 F.3d at 651.

---

at 555, is not relevant, as we have acknowledged that *Perez* applies only to those noncitizens "whose date[s] of conviction for an aggravated felony fall[] after the effective date of IIRIRA," *Ponnapula*, 373 F.3d at 494 n.12