**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2012

No. 11-60396

Lyle W. Cayce
Clerk

PETRA CARRANZA-DE SALINAS, also known as Petra Rodriguez-Salinas,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL

Respondent

Petition for Review of an Order of
the Board of Immigration Appeals

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Petra Carranza-De Salinas (Carranza) was eligible to apply for discretionary relief from removal despite having a criminal conviction for possession of marijuana with intent to distribute. After the enactment of IIRIRA, the provision granting her eligibility was repealed, and IIRIRA specified that aliens with a criminal conviction like Carranza's were no longer eligible to apply for discretionary relief from removal. Carranza argues that this constitutes impermissible retroactive legislation as applied to her case. Because we conclude that Carranza may invoke the presumption against retroactive application, she is entitled to pursue § 212(c) relief. Accordingly, we

No. 11-60396

grant Carranza's petition for review, vacate the Board of Immigration Appeal's (BIA's) order and remand the case to the BIA for additional proceedings.

## BACKGROUND

Carranza, a citizen of Mexico, lawfully entered the United States in 1985. In 1993, after turning down a plea agreement, she was convicted by a Louisiana jury of possession of marijuana with intent to distribute and was sentenced to five years of hard labor, all but one of which were suspended, and four years of probation. Carranza received an automatic first offender pardon in 1994, and the conviction was expunged on April 16, 1999. At the time of her conviction, she was eligible, under former § 212(c) of the Immigration and Nationality Act (INA), to apply to the Attorney General for discretionary relief from deportation.

In 1996, however, Congress passed IIRIRA. IIRIRA repealed § 212(c), *see* 8 U.S.C. § 1182(c), and replaced it with 8 U.S.C. § 1229b, which greatly narrows the class of aliens who are eligible to request discretionary relief. The new provision specifies that aliens such as Carranza, who were convicted of an aggravated felony, are ineligible for such relief. *See id.* § 1229b(a)(3).

In 1997, the Immigration and Naturalization Service (INS) served Carranza with a Notice to Appear, charging that she was subject to removal because her 1993 Louisiana conviction for possession of marijuana with intent to distribute constituted both an aggravated felony and a controlled substance offense. At her deportation hearing on January 9, 1999, an immigration judge (IJ) determined that her conviction rendered her removable. Carranza sought discretionary relief under § 212(c), the INS conceded that she was eligible to seek such relief, and a hearing was set for the merits of her argument.

When that hearing took place in 2003, the INS contended that Carranza was not eligible for § 212(c) relief because her Louisiana conviction resulted from a jury trial rather than a guilty plea. The IJ declined to give Carranza's attorney an opportunity to prepare a response to that argument and, without

2

No. 11-60396

hearing arguments regarding her eligibility for § 212(c) relief, ordered her removed to Mexico. After the BIA remanded the case to the IJ to issue a written order, the IJ ruled that despite its expungement, Carranza's conviction still rendered her removable and that she was no longer eligible to seek § 212(c) relief.

Carranza appealed to the BIA, arguing that under the reasoning of *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004), IIRIRA's repeal of § 212(c) did not apply retroactively to aliens convicted of aggravated felonies who were convicted by jury trial before the enactment of IIRIRA. The BIA declined to follow *Ponnapula* because the case is not precedential in the Fifth Circuit. The BIA also noted that regulations limited eligibility for § 212(c) relief to aliens whose convictions were obtained by plea agreement prior to the enactment of IIRIRA.

Carranza appealed to this court, and we granted her petition for review, vacated the BIA's order, and remanded the case to the BIA. *Carranza-De Salinas v. Gonzales*, 477 F.3d 200, 210 (5th Cir. 2007) (*Carranza I*). Specifically, we noted that in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court had concluded that aliens who pleaded guilty prior to the enactment of IIRIRA could still apply for § 212(c) relief. *Carranza I*, 477 F.3d at 204-05. We explained that the Supreme Court "reasoned that as plea agreements involve a *quid pro quo* between a criminal defendant and the government, to deprive the defendant of . . . continued eligibility for § 212(c) relief after the government had received the benefit of the plea bargain, would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 205 (quoting *St. Cyr*, 533 U.S. at 323) (internal quotation marks omitted). "Finding that aliens likely relied upon the significant likelihood of receiving § 212(c) relief in choosing to forgo their right to trial," we explained that "the Court concluded

3

No. 11-60396

that eliminating such relief has an obvious and severe retroactive effect." *Id.* (quoting *St. Cyr*, 533 U.S. at 325) (internal quotation marks omitted).

Because Carranza was convicted after a trial and did not plead guilty, however, we determined that her case was distinguishable from *St. Cyr. See id.* (citing *Hernandez-Castillo v. Moore*, 436 F.3d 516, 520 (5th Cir. 2006)). In *Hernandez-Castillo*, we reasoned that aliens who proceeded to trial are differently situated from those who pleaded guilty because: (1) they did not "detrimentally change[] [their] position[s] in reliance on continued eligibility for § 212(c) relief"; and (2) they can "point[] to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial" because there was no "quid quo pro relationship" with the government. *Hernandez-Castillo*, 436 F.3d at 520. Thus, we concluded in *Carranza I* that, pursuant to *Hernandez-Castillo*, an alien who was convicted after a jury trial must "demonstrate actual, subjective reliance on the pre-IIRIRA state of the law to be eligible for relief from its retroactive application." *Carranza I*, 477 F.3d at 205.

We acknowledged Carranza's argument that she had delayed applying for § 212(c) relief, based on the assumption that she would continue to be eligible to apply, "in order to establish a history of rehabilitation." *Id.* at 206. And we agreed with the reasoning of *Restrepo v. McElroy*, 369 F.3d 627 (2d Cir. 2004), in which the Second Circuit "held that an applicant's decision to postpone applying for § 212(c) relief to create a longer record of rehabilitation and community ties may create a sufficient reliance interest to create an impermissible retroactive effect of the statute." *See id.* at 207-08. Such aliens, like the alien in *St. Cyr,* had given up something with the expectation that they would continue to be eligible for § 212(c) relief. *Id.* at 207-08. But because the IJ in the instant case had not given Carranza an opportunity to "make a record

4

on her retroactivity claim," we remanded to the BIA for additional proceedings. *Id.* at 210.

On remand, Carranza acknowledged that there was no direct evidence indicating that she had relied on the continued availability of § 212(c) relief in delaying her application for such relief. But, she argued, there was still evidence indicating that she was advised to delay filing for § 212(c) relief until she received the automatic first offender pardon and that she did not appeal her conviction in reliance on § 212(c) being available for relief. Additionally, Carranza argued that her decision to forgo a direct appeal was equivalent to entering a plea agreement and therefore sufficient to show a reliance interest.

The IJ concluded that Carranza had to demonstrate actual reliance in order to apply for § 212(c) relief and determined that she could not do so. Carranza appealed to the BIA, which affirmed the IJ's decision and dismissed her appeal. In concluding that the IJ did not clearly err, the BIA underscored that Carranza (1) could not recall any conversations with her defense counsel prior to or after her conviction; (2) did not recall talking to anyone in 1993 about the immigration consequences of her conviction; and (3) thought that her pardon would resolve any immigration problems. Carranza timely petitioned for review in this court.

Subsequent to the filing of Carranza's original petition with this court, the Supreme Court issued its opinion in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012). In *Vartelas*, the Supreme Court held that another IIRIRA provision, 8 U.S.C. § 1101(a)(13)(C)(ii), could not be applied retroactively to a lawful permanent resident whose conviction, like Carranza's, was obtained prior to the enactment of IIRIRA. *Id.* at 1483-84. That provision required a lawful permanent resident departing the United States, even briefly, to seek admission again upon his return, thus subjecting certain aliens, including Vartelas, to removal. *Id.* at

No. 11-60396

1484-85. Carranza argues that *Vartelas* is a "game-changer" in this case. We agree.

## STANDARD OF REVIEW

"We review factual findings of the BIA and IJ for substantial evidence, and questions of law *de novo*." *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007).

## DISCUSSION

We conclude that, in light of *Vartelas*, Carranza may invoke the presumption against the retroactive application of statutes. Because she has demonstrated the kind of reliance described by the Court in *Vartelas*, namely a "likelihood of reliance on prior law," *see* 132 S. Ct. at 1491, she is entitled to argue that IIRIRA's repeal of § 212(c) relief may not be retroactively applied to her.

### A.

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). The presumption "finds expression in several provisions of our Constitution," including the Ex Post Facto Clause, the Contract Clause, and the Fifth Amendment's Due Process Clause. *Id.* at 266.

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 265. Thus, "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring) (internal quotation marks omitted).

To determine when a law may not apply retroactively, we look to whether "such application would 'tak[e] away or impai[r] vested rights acquired under

No. 11-60396

existing laws, or creat[e] a new obligation, impos[e] a new duty, or attac[h] a new disability, in respect to transactions or considerations already past.'" *Vartelas*, 132 S. Ct. at 1486-87 (quoting *Society for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13156) (Story, J.)).

B.

In *Vartelas*, the Supreme Court began its analysis by noting that the IIRIRA provision at issue there, 8 U.S.C. § 1101(a)(13), does not "expressly prescribe [a] temporal reach." 132 S. Ct. at 1487. The Court explained that 8 U.S.C. § 1101(a)(13) "attach[ed] 'a new disability'" to Vartelas's conviction because if applied to him, it would "block[] him from occasional visits to his parents in Greece." *Id.* In so concluding, the Court rejected the argument "that Vartelas could have avoided any adverse consequences if he simply stayed at home in the United States." *Id.* In prior "cases in which the loss at stake was less momentous," the Court noted, it "ha[d] rejected arguments for retroactivity." *Id.* at 1488 (citing *Chew Heong v. United States*, 112 U.S. 536 (1884), *Landgraf*, 511 U.S. at 280-86, and *St. Cyr*, 533 U.S. at 321-23)).

The Court rejected the contention that the "relevant event" in its analysis was Vartelas's return to the United States. *Id.* The Court explained that Vartelas's travel outside the United States "involved no criminal infraction." *Id.* at 1490. Rather, the Court concluded, the "new disability rested" on Vartelas's crime that rendered him removable, "a single crime committed years before IIRIRA's enactment." *Id.*

The Court also rejected the contention that Vartelas was required to demonstrate that he had relied on being able to leave the United States for short visits without being subject to admissibility requirements. *Id.* at 1490-91. "As the Government acknowledges, 'th[is] Court has not required a party challenging the application of a statute to show [he relied on prior law] in structuring his conduct.'" *Id.* at 1490 (citation omitted). "The operative presumption, after all,

7

is that Congress intends its laws to govern prospectively only. It is a strange presumption . . . that arises only on [so heightened] a showing [of] actual reliance." *Id.* at 1491 (citation omitted) (quoting *Ponnapula v. Ashcroft*, 373 F.3d 480, 491 (3d Cir. 2004)) (internal quotation marks omitted). The Court explained that "[t]he essential inquiry" in determining whether a statute applies retroactively, "is whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* (quoting *Landgraf*, 511 U.S. at 269-70) (internal quotation marks omitted).

The Court did add that "[w]hile the presumption against retroactive application of statutes does not require a showing of detrimental reliance, reasonable reliance has been noted among the 'familiar considerations' animating the presumption." *Id.* (citations omitted) Thus, "[a]lthough not a necessary predicate for invoking the antiretroactivity principle, the likelihood of reliance on prior law strengthens the case for reading a newly enacted law prospectively." *Id.* (citing *Olatunji v. Ashcroft*, 387 F.3d 383, 393 (4th Cir. 2004)).

As an example, the Court offered *St. Cyr*, in which the Court concluded that aliens who pleaded guilty "almost certainly relied upon th[e] likelihood [of receiving discretionary relief] in deciding [to plead guilty, thereby] forgo[ing] their right to a trial." *Id.* at 1491 (alterations in original) (quoting *St. Cyr*, 533 U.S. at 325) (internal quotation marks omitted). By comparison, the Court suggested, "Vartelas's case" might be "even easier" because St. Cyr could only seek discretionary relief, whereas Vartelas was undisputedly free, prior to IIRIRA, to take short trips abroad. *Id.* at 1491-92. Accordingly, the Court declined to apply the new law retroactively. *Id.* at 1492.

## C.

Under *Vartelas*, Carranza need only show a "likelihood of reliance on prior law." *See id.* at 1491. Carranza declined a plea agreement and proceeded to

trial and, furthermore, she chose not to appeal. Under these circumstances, Carranza has made a sufficient showing of the kind of reliance the Court described in *Vartelas*.

In the instant case, as in *Vartelas*, it is undisputed that 8 U.S.C. § 1229b(a)(3) does not expressly prescribe a temporal reach. The Government, however, argues that *Vartelas* does not change the conclusion that Carranza cannot show that the repeal of § 212(c) relief is impermissibly retroactive as applied to her case. Specifically, the Government submits that Carranza cannot show that any of the "familiar considerations" of *Landgraf*—fair notice, reasonable reliance, or settled expectations—apply in her case.

We disagree with the government's analysis of *Vartelas*. First, pursuant to *Vartelas*, the relevant event for the purpose of retroactivity analysis is Carranza's 1993 conviction, not her failure to apply for § 212(c) relief prior to the enactment of IIRIRA. Her failure to apply earlier, like Vartelas's travel abroad, "involved no criminal infraction." *See Vartelas*, 132 S. Ct. at 1490.

Second, the premise on which the government's argument relies—that a showing of actual, subjective reliance is required—is unsupported by *Vartelas*. The Court explained that the "[t]he essential inquiry" of *Landgraf* "is whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* (quoting *Landgraf*, 511 U.S. at 269-70) (internal quotation marks omitted). The Court focused the bulk of its analysis on whether IIRIRA applied a "new disability" to Vartelas's pre-IIRIRA conviction in determining whether the presumption against retroactivity should apply. *See id.* at 1486-90. In the present case, the repeal of § 212(c) relief in IIRIRA attaches new legal consequences to Carranza's conviction: before the passage of IIRIRA, she was eligible to apply for § 212(c) relief; afterwards, she was not.

Moreover, the *Vartelas* Court emphasized that the Court has never required a showing of reliance to demonstrate that a statute applies

retroactively. *Id.* at 1490. In so concluding, the Court cited with approval *Olatunji*, *see id.* at 1491, in which the Fourth Circuit concluded that based on its analysis of the historical presumption against retroactivity and Supreme Court precedent, "we believe that the consideration of reliance is irrelevant to statutory retroactivity analysis." 387 F.3d at 394.

And even insofar as a showing of reliance "strengthens the case for reading a newly enacted law prospectively," the Court's language indicates that it does not require a showing of actual, subjective reliance, but rather only a showing of "likelihood of reliance on prior law." *Vartelas*, 132 S. Ct. at 1491. In discussing *St. Cyr* as well as the case before it, the *Vartelas* Court notably did not inquire into whether the alien in either case had shown actual, subjective reliance. *See id.* Rather, as to *St. Cyr*, the Court reasoned that aliens in a position like that of St. Cyr would likely plead guilty in reliance on the continued availability of § 212(c) relief. *Id.* And as to the petitioner in *Vartelas*, the Court explained that he was previously free to take short trips abroad. *Id.* at 1491-92. "Armed with knowledge that a guilty plea would preclude travel abroad, aliens like Vartelas might endeavor to negotiate a plea to a nonexcludable offense[] . . . or exercise a right to trial." *Id.* at 1492 n.10.

Similarly, Carranza has made a sufficient showing of the kind of reliance the Court described in *Vartelas*. Aliens in Carranza's position—those who declined a plea agreement and went to trial—could instead have negotiated to plead guilty to a nonexcludable offense. Alternatively, an alien in Carranza's shoes who decided not to appeal might have chosen not to do so because she had been sentenced to five years or fewer in prison, which, under pre-IIRIRA rules, would allow her to remain eligible for discretionary relief under § 212. Receiving a new trial could result in a sentence in excess of five years, thus rendering the

No. 11-60396

alien deportable and counseling against appeal.  In these instances, aliens such as Carranza demonstrate a "likelihood of reliance on prior law."  *See id.* at 1491.[1]

## CONCLUSION

In sum, in light the Court's decision in *Vartelas*, we conclude that Carranza is entitled to pursue §212(c) relief.  Accordingly,  we GRANT Carranza's petition for review, VACATE the BIA's order, and REMAND the case to the BIA for further proceedings consistent with this opinion.

---

[1] The government's suggestion—that rejecting its argument requires rendering the presumption against retroactivity unrebuttable—lacks merit.  As the Supreme Court indicated in *Landgraf*, the presumption may be rebutted by Congress's making its intent clear: "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear legislative intent favoring such a result."  511 U.S. at 280.