**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO CARDENAS-DELGADO,
*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,
*Respondent*.

No. 11-72057

Agency No.
A036-224-865

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 29, 2012[*]
San Francisco, California

Filed June 26, 2013

Before: Proctor Hug, Jr., Jerome Farris,
and Edward Leavy, Circuit Judges.

Opinion by Judge Hug

---

 [*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**SUMMARY**[**]

**Immigration**

The panel granted Francisco Cardenas-Delgado's petition for review of the Board of Immigration Appeals' decision finding him ineligible for former INA § 212(c) relief because his conviction for an aggravated felony was the result of a trial.

The panel reasoned that in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), the Supreme Court made it clear that the essential inquiry of retroactivity analysis is to determine whether the new law attaches new legal consequences to completed conduct, and that reliance is not required to prove impermissible retroactivity. The panel held that *Vartelas* is irreconcilable with this court's previous cases holding that a petitioner must prove detrimental reliance. Applying *Vartelas*, the panel held that the repeal of § 212(c) relief impermissibly attaches new legal consequences to the trial convictions of aliens like Cardenas-Delgado by rendering them ineligible for relief as a result of convictions that pre-dated the repeal of § 212(c).

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephen Coghlan, San Francisco, California, for Petitioner.

Stuart F. Delery, Acting Assistant Attorney General, Richard M. Evans, Assistant Director, and Andrew Oliveira, Trial Attorney, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.

**OPINION**

HUG, Circuit Judge:

Francisco Cardenas-Delgado, a legal permanent resident of the United States since 1976, appeals from the Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's ("IJ") decision that he is ineligible for relief from removal under former Immigration and Naturalization Act § 212(c), 8 U.S.C. § 1182(c) (1988), because his conviction for an aggravated felony was the result of a trial. Cardenas-Delgado argues that this was error because it is impermissibly retroactive to apply the repeal of § 212(c) relief to him. We grant Cardenas-Delgado's petition for review.

The Supreme Court's recent decision in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), makes it clear that the essential inquiry of retroactivity analysis is to determine whether the new law attaches new legal consequences to completed conduct and that evidence regarding reliance is not required to prove that a new law is impermissibly retroactive. The repeal of § 212(c) relief impermissibly attaches new legal consequences to the trial convictions of aliens like Cardenas-

Delgado by rendering these aliens ineligible for relief as a result of convictions that pre-dated the repeal of § 212(c).

## BACKGROUND

Cardenas-Delgado is a native and citizen of Mexico who was admitted to the United States in 1976 as a lawful permanent resident. He is married and has three children.

In February 1991, Cardenas-Delgado was convicted, as a result of a jury trial, of sale of cocaine, in violation of California Health and Safety Code § 11352. He was sentenced to three years in prison for that conviction.[1]

As a result of this conviction, over fifteen years later, on June 6, 2006, Cardenas-Delgado was charged in a Notice to Appear with being removable under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), based on a conviction for illicit trafficking in a controlled substance, which is an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). At a hearing on September 7, 2006, Cardenas-Delgado admitted the factual allegations and conceded that he was removable, but said that he would seek a § 212(c) waiver.

On September 7, 2006, Cardenas-Delgado submitted an application for a § 212(c) waiver. The IJ ordered that Cardenas-Delgado's application for § 212(c) relief be pretermitted on the grounds that he was ineligible for § 212(c) relief because his conviction for the sale of cocaine was the

---

[1] The record does not show how much time Cardenas-Delgado actually served for this conviction, but it clearly was less than five years and the government does not contend that it was five years or more.

result of a jury trial. The IJ therefore ordered the removal of Cardenas-Delgado.

On appeal to the BIA, Cardenas-Delgado argued that he was eligible for relief under § 212(c) at the time of his trial conviction and that it was impermissibly retroactive to deny him eligibility for such relief after the repeal of § 212(c). On June 23, 2011, the BIA affirmed the IJ's decision without an opinion.

## STANDARD OF REVIEW

Where, as here, the BIA affirms the IJ's decision without opinion, we review the decision of the IJ as if it were that of the BIA. *See Ge v. Ashcroft*, 367 F.3d 1121, 1124 (9th Cir. 2004). "We review de novo, and without *Chevron* deference to the BIA, whether a change to an immigration law is impermissibly retroactive." *Camins v. Gonzales*, 500 F.3d 872, 880 (9th Cir. 2007).

## DISCUSSION

Cardenas-Delgado contends that, at the time of his trial for the aggravated felony, he would have been eligible for discretionary relief under § 212(c) because he served less than five years in prison, and he argues that the IJ and BIA erred by retroactively applying the 1996 repeal of § 212(c) to him. The key issue is whether electing to go to trial instead of pleading guilty precludes the defendant from establishing that the denial of § 212(c) relief was retroactively applied to him. In order to fully understand these issues, it is first important to understand the history of § 212(c) and the fundamental legal principles governing retroactivity analysis for civil statutes.

## I.   The Statutory Framework and History of § 212(c)

Section 212 of the Immigration and Nationality Act of 1952 excluded from the United States several classes of aliens, including those convicted of offenses involving moral turpitude or the illicit traffic in narcotics.  66 Stat. 182-87; *INS v. St. Cyr*, 533 U.S. 289, 294 (2001).  However, § 212(c) contained a provision granting the Attorney General broad discretion to admit excludable aliens.  It stated:  "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General."  8 U.S.C. § 1182(c) (1988) (repealed).

In 1988, Congress expanded the pool of aliens who were deportable, establishing that an alien would be deportable upon conviction for any aggravated felony.  *See* Anti–Drug Abuse Act of 1988, 102 Stat. 4469–4470, 8 U.S.C. § 1227(a)(2)(A)(iii).  Congress subsequently enacted three statutes that reduced the size of the class of aliens eligible for discretionary relief from deportation.

First, in 1990, Congress amended § 212(c) to prohibit discretionary relief for anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years.  § 511, 104 Stat. 5052 (amending 8 U.S.C. § 1182(c)).  It is significant that, at that time, even an alien deportable because he had been convicted of an aggravated felony was eligible for discretionary relief if he served a term of imprisonment of less than five years.  *See* 8 U.S.C. § 1182(c).  Cardenas-Delgado was convicted of his aggravated felony the

following year, 1991, and served less than five years in prison.

Second, in 1996 Congress adopted § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified in relevant part at 8 U.S.C. § 1182 (1996)). This act rendered all aliens convicted of aggravated felonies ineligible for discretionary relief from deportation under § 212(c). *See* 110 Stat. 1277 (amending 8 U.S.C. § 1182(c)).

Third, also in 1996, Congress passed the Illegal 8Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546. This act repealed § 212(c) entirely, *see* § 304(b), 110 Stat. 3009–597, and replaced it with "cancellation of removal," which is not available to any alien convicted of an aggravated felony regardless of the term of imprisonment imposed or served. *See* 8 U.S.C. § 1229b (1996).

## II. Retroactivity Jurisprudence Established by the Supreme Court in *Landgraf* and *St. Cyr*

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), a landmark retroactivity case, the Supreme Court recognized that a "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf*, 511 U.S. at 265. The Court noted that the "presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Id.* at 270. The Court further noted that, "[s]ince the early days of this Court, we have declined to give retroactive

effect to statutes burdening private rights unless Congress had made clear its intent." *Id.*

The Court therefore established a two-step procedure for determining whether a civil statute may apply retroactively. First, when a statute is enacted after the events at issue in a suit, the court must determine whether Congress expressly provided that the statute should apply retroactively. *Landgraf*, 511 U.S. at 280. If the answer is yes, then the inquiry is complete and the statute applies retroactively. *Id.* If the answer is no, then the court must proceed to the second step and determine whether the statute would have a retroactive effect. *Id.* If the statute would operate retroactively, then the court must apply the traditional presumption against retroactivity and prohibit retroactive application of the statute. *Id.*

The *Landgraf* Court also explained that a determination of whether a statute operates retroactively turns on "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70. This assessment "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270. The Court also highlighted Justice Story's classic explication of when legislation is retroactive: "'every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already

past, must be deemed retrospective.'"[2]  *Id.* at 269 (quoting *Society for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (No. 13,156) (C.C.N.H. 1814)).  The Court noted that, in hard cases, "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" in applying the test for retroactivity.  *Id.* at 270.

In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court applied *Landgraf* in the context of an immigration case when considering the statutory elimination of § 212(c) relief.  *Id.* St. Cyr, a lawful permanent resident, pleaded guilty on March 8, 1996 to a charge of selling a controlled substance. *Id.* at 293.  That conviction made him deportable.  *Id.*  Under the law applicable at the time of his conviction, however, St. Cyr would have been eligible for a § 212(c) waiver.  *Id.* Nevertheless, removal proceedings against him were initiated after both AEDPA and IIRIRA became effective, and the government asserted that St. Cyr no longer was eligible for a waiver.  *Id.*

The Supreme Court held that the repeal of § 212(c) would not apply to St. Cyr.  *St. Cyr*, 533 U.S. at 326.  It reached this conclusion by applying the two-step analysis outlined in *Landgraf*.  Applying the first step of *Landgraf*'s retroactivity analysis, the Court first asked whether Congress had clearly expressed an intention to make IIRIRA § 304(b) retroactive, and concluded that it had not.  *St. Cyr*, 533 U.S. at 315–20.

---

[2] The Supreme Court has made it clear that this language by Justice Story does not define the outer limits of impermissible retroactivity, but instead describes several sufficient conditions, rather than necessary conditions, for determining that legislation is retroactive.  *See INS v. St. Cyr*, 533 U.S. 289, 321 n.46 (2001); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 947 (1997).

The Supreme Court therefore proceeded to the second step of the *Landgraf* framework and began by explaining that "[t]he inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 321 (internal quotation marks omitted). The Court held that "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past." *Id.* (internal quotation marks and citations omitted).

The Court noted that "[p]lea agreements involve a *quid pro quo* between a criminal defendant and the government," resulting in defendants waiving constitutional rights in exchange for government benefits such as prompt punishment and the preservation of prosecutorial resources. *Id.* at 321–22. "Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA," the Court reasoned that "preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id.* at 323. The Court recognized that "[r]elying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in . . . St. Cyr's position agreed to plead guilty." *Id.* at 323. Therefore, the Court concluded that "it would surely be contrary to 'familiar considerations of fair notice, reasonable reliance, and settled expectations' . . . to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief." *Id.* at 323–24 (quoting *Landgraf*, 511 U.S. at 270).

### III. Is the Repeal of § 212(c) Relief Impermissibly Retroactive as Applied to Cardenas-Delgado?

In the case currently before us, it is undisputed that Congress did not express an intent to make the repeal of § 212(c) relief retroactive. We therefore focus on the second part of the *Landgraf* framework. Cardenas-Delgado argues that reliance is not a requirement for proving that the repeal of § 212(c) relief is impermissibly retroactive, and that he should be able to contend that the denial of § 212(c) relief is retroactive even though he elected to go to trial.

In the wake of *St. Cyr*, courts have disagreed about whether some kind of reliance on prior law is required in order to successfully bring a retroactivity challenge to a new immigration law. Relying on a Third Circuit case, *Atkinson v. Att'y Gen.*, 479 F.3d 222 (3d Cir. 2007), Cardenas-Delgado argues that reliance is not required and the change in legal consequences for events completed before the repeal of § 212(c) constitutes an impermissible retroactive effect. In *Atkinson*, the petitioner had not been offered a plea agreement and had been convicted by a jury of an aggravated felony in 1991. *Id.* at 224, 229. He received a sentence of less than five years, leaving him eligible at that time for § 212(c) relief. *Id.* at 224, 229–30. The BIA held that he was not eligible for § 212(c) relief because *St. Cyr* applied only to aliens who had entered into plea agreements and not to aliens who, like Atkinson, had been tried and found guilty. *Id.* at 224–25.

The Third Circuit disagreed and granted the petition for review. *Id.* at 231. The court rejected the proposition that *St. Cyr* supported the conclusion that there must be reliance on the prior state of the law in order to hold that the elimination of § 212(c) relief is impermissibly retroactive. *Id.* at 228–29.

The court reasoned that the Supreme Court had never held that reliance on the prior law is a requirement to determine that a law is impermissibly retroactive. *Id.* at 227–29.

The *Atkinson* court therefore held that even aliens who had not been offered plea bargains and had been convicted of aggravated felonies following a trial would be eligible for § 212(c) relief if the alien was convicted at a time when that conviction would not have rendered him ineligible for § 212(c) relief. *Id.* at 229–30. The court reasoned that eliminating the availability of relief would be impermissibly retroactive because it would attach new consequences (the certainty of deportation rather than the possibility of deportation) to events (the conviction) completed before the repeal of § 212(c). *Id.* at 230.

Similarly, based on its interpretation of *Landgraf*, *Hughes*, and *St. Cyr*, the Fourth Circuit held in an IIRIRA case that "reliance (whether subjective or objective) is not a requirement of impermissible retroactivity." *See Olatunji v. Ashcroft*, 387 F.3d 383, 388 (4th Cir. 2004). Instead, the Fourth Circuit concluded, the standard is "'whether the new provision attaches *new legal consequences* to events completed before its enactment'" *Id.* at 395 (quoting *Landgraf*, 511 U.S. at 269).

However, in contrast to the Third and Fourth Circuits, we have held on more than one occasion, either implicitly or explicitly, that a petitioner must prove some kind of detrimental reliance on pre-existing law to succeed in a retroactivity challenge to a new immigration law. For example, in *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121–22 (9th Cir. 2002), without explicitly stating that reliance was a requirement to prove impermissible

retroactivity, we denied the petition for review when we determined that the petitioner could not establish reliance on the prior availability of the § 212(c) waiver.

In *Saravia-Paguada v. Gonzales*, 488 F.3d 1122, 1133–34 (9th Cir. 2007), where the petitioner had sought § 212(c) relief, we concluded that the alien had failed to show the required reliance on prior law and that an alien could not establish impermissible retroactivity by showing that a change in the law attached new legal consequences to past conduct. Similarly, in *Hernandez de Anderson v. Gonzales*, 497 F.3d 927 (9th Cir. 2007), we recognized that there was a split in authority regarding the proper interpretation of *St. Cyr* and stated: "Expressly disapproving the conclusion of the Third and Fourth Circuits, this court has held that aliens claiming that IIRIRA's repeal of relief from deportation is impermissibly retroactive as applied to them must demonstrate reasonable reliance on pre-IIRIRA law." *Id.* at 939.

However, after the development of this split in authority, the Supreme Court recently decided a case that undercuts Ninth Circuit law and demonstrates that no form of reliance is required in order to successfully challenge the denial of § 212(c) relief on grounds that the repeal of such relief is retroactive. Subsequent to the BIA's decision in Cardenas-Delgado's case and the filing of his brief in this appeal, the Supreme Court decided *Vartelas v. Holder*, 132 S. Ct. 1479 (2012). In *Vartelas*, the Supreme Court held that it was impermissible to retroactively apply another IIRIRA provision, 8 U.S.C. § 1101(a)(13)(C)(ii), to a lawful permanent resident whose conviction was obtained prior to the enactment of IIRIRA. *Id.* at 1483–84. When Vartelas pleaded guilty to a crime involving moral turpitude in 1994,

an alien in his situation was permitted to travel abroad for brief periods without jeopardizing his lawful permanent resident status. *Id.* at 1483. However, Congress subsequently enacted IIRIRA, which rendered lawful permanent residents who had a conviction like Vartelas's removable if they traveled abroad and returned to the United States. *Id.* at 1483. Vartelas traveled to Greece in 2003 to visit his parents. *Id.* Upon his return to the United States, he was treated as inadmissible under IIRIRA and placed in removal proceedings. *Id.*

Relying on both *Landgraf* and *St. Cyr*, the Supreme Court held that the new provision of IIRIRA was impermissibly retroactive because it "attached a new disability (denial of reentry) in respect to past events (Vartelas' pre-IIRIRA offense, plea, and conviction)." *Id.* at 1483–84, 1487–88. In the course of its opinion, the Supreme Court made it clear that neither actual reliance nor reasonable reliance was required to show that a statute was impermissibly retroactive. *Id.* at 1490–91. The Court emphasized that even the government acknowledged that the Supreme Court had not required a party challenging the retroactive application of a statute to show he relied on prior law in structuring his conduct. *Id.* at 1490. In addition, the Court noted that, in some of its prior cases, it had held that it was impermissible to apply a new law retroactively, even though detrimental reliance was not apparent in those cases. *Id.* at 1490–91 & n.8. Citing to *Landgraf* and a Third Circuit case, the Court went on to state:

> The operative presumption, after all, is that Congress intends its laws to govern prospectively only . . . . "It is a strange 'presumption,'" the Third Circuit commented, "that arises only on . . . a showing [of] actual

> reliance." *Ponnapula v. Ashcroft*, 373 F.3d 480, 491 (2004).  The essential inquiry, as stated in *Landgraf*, 511 U.S., at 269–270, 114 S. Ct. 1483, is "whether the new provision attaches new legal consequences to events completed before its enactment."  That is just what occurred here.

*Id.* at 1491 (emphasis added).  The Court explicitly stated that the likelihood of reliance on prior law is not a necessary predicate for proving retroactivity.  *Id.*

Thus, after *Vartelas*, it is clear that someone seeking to show that a civil statute is impermissibly retroactive is not required to prove any type of reliance and that the essential inquiry is whether the new statute attaches new legal consequences to events completed before the enactment of the statute.  *Vartelas* dictates our decision in the case before us. The Fifth Circuit recently considered *Vartelas* when deciding a case very similar to the instant case.  *See Carranza-De Salinas v. Holder*, 700 F.3d 768 (5th Cir. 2012). In 1993, prior to the repeal of § 212(c), Carranza had been convicted at trial of possession of marijuana with intent to distribute and had served a sentence of less than five years. *Id.* at 769–70.  The Fifth Circuit changed its previous law and rejected the government's argument that Carranza was required to show reliance.  *Id.* at 772–75.  The court held that the repeal of § 212(c) relief impermissibly attached new legal consequences to Carranza's conviction.  *Id*. at 774–75.

In light of *Vartelas*, we conclude that the court in *Carranza-De Salinas* was correct in its conclusion that an alien need not prove any type of reliance in order to show that the repeal of § 212 relief is impermissibly retroactive and

need only show that the repeal is impermissibly retroactive because it attaches new consequences to a trial conviction for an aggravated felony. Just as IIRIRA's repeal of § 212(c) relief attached new legal consequences to the trial conviction in *Carranza-De Salinas*, the repeal attached new consequences to Cardenas-Delgado's trial conviction. The record indicates that, before the passage of IIRIRA, Cardenas-Delgado was eligible for § 212(c) relief, but afterwards he was not.

The government, however, contends that we are bound by our prior law establishing that an alien who chose to go to trial and was convicted prior to IIRIRA's effective date is ineligible for § 212(c) relief because he cannot establish reasonable reliance on pre-IIRIRA law. We disagree.

We have held that, although a three-judge panel generally may not overrule a prior decision of this court, that rule does not take into account situations in which the prior decision has been "undercut by higher authority to such an extent that it has been effectively overruled by such higher authority and hence is no longer binding on district judges and three-judge panels of this court." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). In this case the ruling was undercut by the Supreme Court. In *Miller*, we reasoned that the goal of preserving the consistency of circuit law "must not be pursued at the expense of creating an inconsistency between our circuit decisions and the reasoning of state or federal authority embodied in a decision of a court of last resort." *Id.* at 900. When a three-judge panel is deciding whether prior case law has been overruled, "the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut

the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."

According to the government, *Vartelas* has not undercut the theory or reasoning of this court's precedent in a way that renders the cases clearly irreconcilable with *Vartelas*. The government argues that the statutory provision at issue in *Vartelas* was a different statutory provision that did not involve a petitioner's eligibility for § 212(c) relief and further argues that *Vartelas* is a narrow decision focused on a discrete issue. These arguments are unpersuasive for two reasons.

First, nowhere in the *Vartelas* Court's discussion of retroactivity did the Supreme Court suggest that it was limiting its decision that there was no reliance requirement to the particular statute at issue in that case. *See Vartelas*, 132 S. Ct. at 1490–91. In fact, the Supreme Court used very broad language to state that it "has not required a party challenging the application of a statute to show [he relied on prior law]" and that the "presumption against retroactive application of statutes does not require a showing of detrimental reliance." *Id*. at 1490 (internal quotation marks omitted). Moreover, when stating that the essential inquiry is whether the new provision attaches new legal consequences to events completed before its enactment, the *Vartelas* Court quoted *Landgraf*, *id.* at 1490, a case that not only addressed a different statute than the one at issue in *Vartelas*, but established the principles that generally apply when assessing the retroactivity of civil statutes. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 38 n.6 (2006). Moreover, in *Landgraf*, the Supreme Court recognized that the presumption that a statute should not operate retroactively applied to a broad range of civil cases. *Landgraf*, 511 U.S. at 271–72.

Second, in the course of holding that there is not a reliance requirement for proving that a statute is impermissibly retroactive, the Supreme Court cited to *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004), a case that, like the one currently before us, concerned whether the repeal of § 212(c) relief was impermissibly retroactive for a petitioner who had been convicted at trial of an aggravated felony. *See Vartelas*, 132 S. Ct. at 1491. Thus, it is unreasonable to conclude that the Supreme Court did not intend for the principles it articulated in *Vartelas* to apply in the context of determining whether the repeal of § 212(c) relief may be applied retroactively to an aggravated felon such as Cardenas-Delgado. The Fifth Circuit recognized this when it changed its own law in response to *Vartelas*. *See Carranza-De Salinas*, 700 F.3d at 770–72.

The government maintains that the Supreme Court concluded in *St. Cyr* that reliance is the significant factor when evaluating the retroactive effect of the loss of 212(c) eligibility. This argument mischaracterizes *St. Cyr*. Although much of the retroactivity discussion in *St. Cyr* involved reliance, nowhere in *St. Cyr* did the Supreme Court state that reliance is the significant factor when evaluating the retroactive effect of the repeal of § 212(c) eligibility in general or even in the guilty plea context. Moreover, in *St. Cyr*, the Supreme Court reiterated Justice Story's pronouncement that a statute operates retroactively when it attaches a new disability and it reaffirmed the principle that the determination regarding whether a new statute operates retroactively is based on whether the new statute attaches new legal consequences to acts completed before its enactment. *St. Cyr*, 533 U.S. at 321.

The government does not identify a logical reason for why retroactivity law should be different in cases involving § 212(c) relief. The government contends that there is no unfairness in retroactively applying the repeal of § 212(c) because the petitioner is merely losing the *potential* for § 212(c) relief. However, the Supreme Court held in *St. Cyr* that "the fact that § 212(c) relief is discretionary does not affect the propriety of our conclusion. There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 325. There can be no doubt that eliminating the possibility of discretionary relief would impose a serious new disability on Cardenas-Delgado. Like the petitioner in *Vartelas*, if Cardenas-Delgado is removed, his ability to be with his family will be severely restricted. His wife and three children are in the United States and he not only would be forced to leave them, but also would be forced to leave the country that has been his home for over thirty-five years. These facts, along with the fact that it appears that Cardenas-Delgado has not committed a crime in over twenty years, make it significantly more likely that he would, in fact, receive relief from removal if he is eligible for such relief. The criteria for determining whether to grant § 212(c) relief include the seriousness of the offense, evidence of either rehabilitation or recidivism, the duration of the alien's residence, the impact of deportation on the family, and the number of citizens in the family. *St. Cyr*, 533 U.S. at 296 n.5. Section 212(c) relief thus is designed to turn on the criminal history and rehabilitation of the alien and the consequences of removal to the alien and his family.

We hold that *Vartelas* is irreconcilable with our previous precedent and that the law does permit Cardenas-Delgado to present evidence in order to prove that the repeal of § 212(c)

eligibility is impermissibly retroactive as applied to him even though he went to trial because the repeal attaches new legal consequences to his conviction.

Cardenas-Delgado contends that even though he went to trial he should have been given the opportunity to make a reliance argument to show that the denial of eligibility for § 212(c) relief was impermissibly retroactive. However, with our holding that it is unnecessary to show reliance to establish that the denial of § 212(c) relief is retroactive, there is no point in discussing whether Cardenas-Delgado could rely on prior law even though he went to trial. It would simply be dicta in this case.

## CONCLUSION

We **GRANT** the petition for review, **VACATE** the BIA's order, and **REMAND** the case for further proceedings consistent with this opinion.